```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X

UNITED STATES OF AMERICA,            :      06 CR. 1068

        -against-                    :      MEMORANDUM OPINION
                                                AND ORDER
MICHAEL LAIR,                        :

                Defendant.           :

------------------------------------------------------X
```

HAIGHT, Senior District Judge:

In this criminal action, the Government moves for an order of detention pursuant to the Bail Reform Act, 18 U.S.C. § 3142(e). The defendant, who is presently incarcerated pending trial, cross-moves for release from custody in accordance with the terms and conditions of a bail package which he has proffered.

The case came before this Court sitting in Part I during the absence from the courthouse of District Judge Casey, to whom the case has been assigned.

## BACKGROUND

The indictment charges defendant Michael Lair with four counts of wire fraud, in violation of 18 U.S.C. §1343. Specifically, the Government charges Lair with orchestrating and implementing a fraudulent scheme whereby he contacted parties and attorneys involved in high profile litigation, falsely claimed to have gathered evidence relevant to that litigation and demanding up-front payments before disclosing the evidence, or falsely claiming to have been solicited by other counsel in such litigation to engage in illegal and unethical conduct, and demanding up-front payments before disclosing evidence of that contact. The indictment describes "Litigation One" and

1

"Litigation Two." In Litigation One, the Government alleges that Lair approached counsel for a former CEO of an insurance company engaged in litigation with that company, claiming to have evidence that would assist that individual in the litigation, and demanding and receiving from the CEO's attorneys approximately $75,000. In Litigation Two, the Government alleges that Lair contacted an attorney representing a large pharmaceutical company involved in litigation with a large hedge fund, offered the attorney representing the pharmaceutical company evidence that would assist in the litigation, received from the company's attorney certain fees, was thereafter fired by the attorney, and approached a lawyer representing the hedge fund, falsely telling that attorney that the pharmaceutical company had hired Lair to use illegal and unethical investigative techniques in connection with the litigation, eventually receiving approximately $50,000 in advance of producing such evidence. The Government's theory of the case is that all of Lair's representations to these litigants and their attorneys were false, and that he never produced any of the promised evidence.

Following his arrest on December 14, 2006, Lair was arraigned before Magistrate Judge Henry B. Pitman. On December 19, 2006, Lair appeared at a retention hearing before Magistrate Judge Kevin N. Fox. Judge Fox set Lair's bail as follows: a $50,000 personal recognizance bond, co-signed by two financially responsible persons and secured by $1,500, with the additional bail conditions of strict Pretrial Services supervision, the provision by defendant of an address where he would reside when released, verification by Pretrial Services of that address, drug testing and treatment of the defendant, the defendant's abiding by a domestic order of protection referred to in the bail report, the restriction of defendant's travel to the Southern and Eastern Districts of New York and the District of Montana (where defendant maintained his home), and the surrender of travel documents.

Dissatisfied with these terms and conditions of bail, the Government moved for a detention hearing before this Court. In connection with that hearing, the Pretrial Services officer recommended Lair's release "on a moderate bond, co-signed by 2 financially responsible persons and secured by some combination of cash or property." Report of Pretrial Services Officer Jeffrey Thomas Steimel, dated January 18, 2007. In effect, Officer Steimel reiterated the bail terms and conditions imposed by Judge Fox.

Since the government contends that the bail set by Judge Fox is inadequate and unacceptable, the procedural vehicle for its motion is 18 U.S.C. § 3415(a)(1), which provides that if a person is ordered released by a magistrate judge, "the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . . ." Lair resists that motion, contends that the amount of bail should remain at $50,000, states that he is in a position to post $1,500 in security and proffers two individuals, residents of Montana, as co-signers of the $50,000 personal recognizance bond.

The Government is represented by AUSA Helen V. Cantwell. Lair is represented by Leonard F. Joy, Attorney-in Chief of the Federal Defender's Office. The Court conducted two hearings at which counsel argued their positions. At the second of these hearings, AUSA Cantwell represented to the Court that further investigation by FBI agents had located some 10 or 12 additional victims of the same fraudulent scheme perpetrated by Lair in the same manner as that described with respect to "Litigation One" and "Litigation Two" in the present indictment. The Government announced its intention of superseding the indictment to include these additional facts. In response to an inquiry from the Court the Government estimated the length of its case in chief at about two weeks, and said it would call between 20 and 30 witnesses.

Having considered the oral submissions of counsel, and a more recent exchange of correspondence between them, the Court concludes that no further evidentiary hearing is necessary in the case, and that these cross-motions are now ripe for decision.

## DISCUSSION

The Government's motion for a detention order is governed by 18 U.S.C. § 3142(e), which provides that a judge "shall order the detention of a person before trial" if after conducting a hearing, the judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. . . ." In the case at bar, the Government stresses the risk of flight factor rather than the safety of the community.

The Second Circuit interprets § 3142(e) "to require a district court to engage in a two-step inquiry before ordering a defendant released or detained pending trial." *United States v. Shakur*, 817 F. 2d 189, 194 (2d Cir. 1987) (citation omitted). In *Shakur*, the court of appeals continued:

> First, the court must make a finding as to whether the defendant presents a risk of flight if not detained. Second, if the court finds that a defendant is likely to flee, then the court must proceed to the second step of the inquiry, namely, whether there are conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released. The burden of proof is on the government to prove the absence of such conditions by a preponderance of the evidence.

*Id*. at 194-95 (citations omitted).

The first inquiry, risk of flight, usually poses the question whether the accused will flee from the district in which the indictment has been lodged and his trial will take place. *See, e.g.*, *United States v. Friedman*, 837 F.2d 48, 49-50 (2d Cir. 1988) (rejecting government's contention that strength of its case and the length of the potential sentence supported a finding of risk of flight from

this district).  The court found, *inter alia*,

> [I]t is undisputed that Friedman is a life-long New York resident, that he has no prior criminal record, that he has no passport or known ability to evade surveillance, that he has worked gainfully in the New York area for twenty-five years prior to his arrest, and that he is married and has three children all of whom live in the New York area.

*Id*. at 49-50.

These particular circumstances do not arise in the case at bar because Lair has no contact with or ties to this district.  As noted, he is a resident of Montana, and his counsel made it plain that if Lair is released on bail, he will go and resume a residence in Bozeman.  The question therefore becomes whether Lair would return from Montana to this district whenever required by the Court, including for trial.  That question, of course, lies at the heart of the second statutory inquiry, which asks if any conditions of bail "will reasonably assure the appearance of the person as required."

The two inquiries overlap in such circumstances.  If one considers the first question, risk of flight, separately, as *Shakur* requires, the inquiry becomes whether there is a risk that Lair would flee from prosecution itself, by not returning to New York and vanishing from Montana.

I conclude that the government has proved by a preponderance of the evidence that, thus defined, Lair poses a risk of flight.  His ties to Montana, or to any other community, are not strong. He is divorced from his second wife.  A son, one of the two proposed bond co-signers (more of him *infra*) lives in Colorado and their contacts are infrequent.  Lair has no substantial or reputable business in Montana.  According to the Pretrial Services report, Lair reported that for 13-15 years he worked out of his residence as the owner of ConsumerDefense.com, whose website offers investigative and information-gathering services, and which Lair presumably used to perpetrate the

frauds alleged in the indictment. Lair's rap sheet includes a number of offenses which, while relatively minor in nature and some occurring years ago, nonetheless evidence a persistent disregard of legal obligations. The length of the possible sentence, while as *Friedman* holds is not by itself determinative of risk of flight, may nonetheless be longer than Lair's counsel acknowledges. Mr. Joy says in his letter that Lair "is facing 12 to 18 months on the present indictment on a plea and 15 to 21 months if the indictment is superseded to encompass a $200,000 loss." These calculations, which counsel does not further explain, appear to assume that Lair's Criminal History Category would be I and that, in response to a prompt plea, Lair would receive the full 3-level Offense Level reduction under Guidelines §3E1.1(b). In evaluating this factor, however, the Court cannot assume that a plea will be offered, and if Lair's Criminal History Category is II rather than I (a question on which I intimate no view), the potential sentence is materially increased. These circumstances combine to justify a finding, which I make, that Lair presents a risk of flight if not detained.

Proceeding to the second step of the inquiry, I am instructed by the statute and by the Second Circuit in *Shakur* to determine "whether there are conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released." The statutory rendition of this language, found in § 3142(e), requires the judge, before making an order of detention, to find "that no condition or combination of conditions will reasonably assure the appearance of the person as required." I do not interpret this language to require that the judge must engage in a hypothetical or metaphysical meditation upon whether some combination of conditions might be imagined which would assure a defendant's appearance; rather, the inquiry must be whether such condition or combination of conditions are available, given the particular circumstances of the case.

I am led to that conclusion by § 3142(g), which provides that the judge, "in determining

whether there are conditions of release that will reasonably assure the appearance of the person as required . . . , take into account the available information concerning – (1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including – (A) the person's character . . . family ties, employment, financial resources, length of residence in the community, community ties, past conduct," and other factors.

Frequently these statutory factors are implicated, as they are in the present case, when the court evaluates the sufficiency of a proffered bail package. Specifically, where as here the bail set by Judge Fox required that the defendant's $50,000 personal recognizance bond be co-signed by "two financially responsible persons," the Government is entitled to enquire into and the Court must evaluate the financial responsibility of the individuals proposed as co-signers of the bond. The phrase "financially responsible" has been construed to mean "an ability to pay the amount specified in the bond if [the defendant] fails to appear at trial." *United States v. Penaranda*, No. 00 Cr. 1251, 2001WL125621 (S.D.N.Y. Feb. 13, 2001), at * 1 (citing and quoting *United States v. Gotay*, 609 F. Supp. 156, 156 (S.D.N.Y. 1985)). Where, under that definition, the co-signers offered by a defendant "do not qualify due to their low incomes, even though they do have steady employment histories," the court will conclude that the defendant "has not satisfied the financial conditions of his bail." *Penaranda*, 2001WL125621, at *1.

Applying these several factors to the case at bar, they argue in favor of the Government's motion for an order of detention and against Lair's cross-motion to be released in accordance with the bail set by Magistrate Judge Fox.

The first factor, "the nature and circumstances of the offense charged," argues in favor of

detention because the indictment portrays Lair as an experienced, sophisticated and successful (up to a point) practitioner of fraud. *See United States v. Gentry*, 455 F. Supp. 2d 1018, 1028-29 (D. Ariz. 2006) (nature and circumstances of crimes charged "strongly favors the Government and Gentry's continued detention" where the criminal conduct charged was "based on lies and deception").

The second factor, the weight of the government's evidence against Lair, weighs heavily in favor of detention. At the first hearing before the Court, when no mention was made of a superseding indictment and only two incidents were alleged, Mr. Joy suggested that the indictment described nothing more than a dispute or misunderstanding between parties to a contract. He reiterates that suggestion in his letter to the Court, where he says that Lair

> entered into contracts with the two law firms named in the indictment. They agreed on a per hour fee and Mr. Lair used his best efforts to obtain the information the firms were seeking. When he was unsuccessful the firms asked for their money back and when he did not give it to them they apparently notified the authorities and this criminal action commenced.

Letter dated January 26, 2007, at p. 2. But this portrayal of the underlying events becomes far less plausible if the Government is in a position, as it represents, to supersede the indictment and prove at trial ten or more additional scams engineered by Lair, employing the same or highly similar methods of operation. If that proof is presented to the jury, the jurors would have difficulty accepting the defense theory that the case is about nothing more than a series of contractual misunderstandings with respect to the refundability of up-front payments, solicited and retained by Lair in good faith, although no promised evidence was furnished by Lair to the persons or law firms with which he dealt. Moreover, the availability of such evidence to the government is suggested by

the sworn complaint of D.J. Kang, an FBI agent, upon which an arrest warrant for Lair was issued. That complaint recites that on October 5, 2006, "other FBI agents conducted a search, pursuant to a search warrant of storage units rented by Lair in Bozeman, Montana and Lair's residence" in that city. The agents seized, among other documents, numerous non-disclosure agreements ("NDAs") "Lair had sent to other lawyers involved in highly publicized lawsuits." Complaint at ¶ 8(b). Presumably it is by following up on such leads that the FBI agents discovered the identity of the other victims of the fraud.

As for the third factor, the history and characteristics of the defendant, I have considered the relevant circumstances in my discussion of the risk of flight question, and would only observe here that such factors also militate in favor of a detention order.

I am of course aware that in applying these factors to any particular case, "the court should bear in mind that it is only a limited group of offenders who should be denied bail pending trial." *Shakur*, 817 F. 2d at 195 (citation and internal quotation marks omitted). While I am not prepared to say, in the theoretical or metaphysical sense, that no conceivable condition or combination of conditions of release could be imagined that would reasonably assure Lair's appearance at trial, it seems fair to assume that, given the amount of time it required for Lair to put the presently proffered bail package together, it is the best he can do. And that bail package is insufficient because the two bond co-signers identified are not financially responsible persons, as required by Judge Fox's bail order and as that phrase is defined by the cases. There is really no question about this. At the second hearing, AUSA Cantwell advised the Court of the results of her inquiries into these two individuals. One is Lair's son, who lives in Colorado. The other is a social acquaintance who lives in Bozeman. Neither of these individuals has the financial resources which suggest that they would be able to pay

even the relatively modest $50,000 bond set by Judge Fox. Lair does not attempt to rebut the government's assessment of the financial responsibility of the proposed co-signers. In that circumstance, I need not consider the related factor of moral suasion.

For these reasons, the government's motion for an order of detention is granted and Lair's cross-motion to be released on the proferred bail package is denied.

The foregoing constitutes the Court's findings and conclusions under the Bail Reform Act. The defendant will remain detained pending trial and pending any further order of the Court.

Dated: New York, New York
February 2, 2007

_____
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE